UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 6:19-bk-00329-CCJ |
| MARK CHRISTOPHER KALEY, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |

**SECURITIES AND EXCHANGE COMMISSION'S
OPPOSITION TO DEBTOR'S MOTION FOR RELIEF FROM JUDGMENT**

The Securities and Exchange Commission ("SEC" or "Commission") submits this Response in opposition to the *Debtor's Motion for Relief from Judgment as to Debtor in Favor of Securities and Exchange Commission, or In the Alternative to Stay This Bankruptcy Proceeding* (Docket No. 19, the "Motion").

I.    **INTRODUCTION**

In his Motion, the Debtor asks this Court to declare unenforceable a final judgment rendered against him in the District Court for the Middle District of Florida, the merits of which were affirmed on appeal after detailed analysis by the Eleventh Circuit. The District Court action related to a fraudulent scheme by several entities and individuals, including the Debtor, to profit from the inflated price of a penny-stock company. In that case, the SEC alleged that the Debtor violated Section 17(a) of the Securities Act of 1933 and Section 20(e) of the Securities Exchange Act of 1934. The SEC prevailed after a jury trial, and a judgment was entered against the Debtor for $156,500, plus post-judgment interest.

The Court should deny the Motion. First, contrary to the Debtor's arguments, Federal Rule of Civil Procedure ("FRCP") 60(b) does not empower this Court to vacate the District

Court's judgment. Motions under that rule must be presented to the court in which the judgment was rendered. Second, the Debtor's liability under the judgment is nondischargeable under Section 523(a)(19) of the Bankruptcy Code, and a bankruptcy court's general powers of equity cannot be used to discharge a debt that is statutorily nondischargeable. Third, the issue of the Debtor's ability to pay has already been litigated and cannot be collaterally attacked. Finally, the Court should deny the Debtor's request to stay these proceedings because he has not made the appropriate showing under Section 305 of the Bankruptcy Code.

## II. BACKGROUND

### A. A Jury Found Debtor Liable in the SEC Enforcement Action and the Eleventh Circuit Affirmed

On November 18, 2009, the SEC filed a complaint (the "Complaint" or "Compl.") to commence a civil enforcement action against the Debtor, Mark C. Kaley ("Debtor" or "Kaley"), and three other individuals and two entities, in the United States District Court for the Middle District of Florida (the "SEC Enforcement Action").[1] *See* Complaint, *SEC v. Big Apple Consulting USA, Inc. et al.*, Case No. 6:09-cv-1963, a true and correct copy of which is attached hereto as Exhibit A. According to the Complaint, the defendants participated in a fraud perpetrated by CyberKey Solutions, Inc. ("CyberKey"), a Utah-based company that once sold flash memory drives and other electronic devices, and its former chief executive officer. (Compl. ¶¶ 1-8.)

The gravamen of the Complaint was that CyberKey artificially inflated the price of its stock by engaging in "an elaborate scheme to publicize a fictitious $25 million purchase order from the U.S. Department of Homeland Security ('DHS') to attract interest in CyberKey . . . ."

---

[1] A court may take judicial notice of a document filed in another court not for the truth of the matter asserted but rather to establish the fact of such litigation and related filings. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation omitted).

(*Id*. ¶ 1.) The Complaint further alleged that defendants Big Apple Consulting USA, Inc. ("Big Apple"), and its wholly owned subsidiary MJMM Investments, LLC ("MJMM"), facilitated CyberKey's fraud by drafting press releases and operating a boiler room, which employed 14-50 callers, to promote CyberKey and its fictitious DHS purchase order. (*Id*. ¶ 25.) In payment for these services, MJMM allegedly received millions of CyberKey shares, which—with other shares it purchased from CyberKey—it sold into the public market for proceeds totaling at least $9.6 million. (*Id*. ¶ 2.) According to the Complaint, MJMM and Big Apple kept over $7.5 million of the proceeds from these sales, transferring back to CyberKey at least $2 million. (*Id*.)

During the relevant events, Kaley served as MJMM's president and Big Apple's corporate counsel[2] and secretary. In those roles, he helped draft and edit the allegedly misleading press releases for CyberKey. (*Id*. ¶¶ 19 and 58.) The SEC alleged that Kaley knew, or was severely reckless in not knowing, that the press releases he drafted and edited were false. (*Id*. ¶¶ 67, 5, 31-34, and 36-45.) From 2005 to 2006, during the CyberKey fraud, Kaley's annual compensation grew from $91,259 to $753,950. (*Id*. ¶ 60.)

In January 2012, the case went to trial and a jury returned a verdict in favor of the SEC. *SEC v. Big Apple Consulting USA, Inc.*, No. 6:09-cv-1963, 2012 U.S. Dist. LEXIS 111923, at *1 (M.D. Fla. Aug. 9, 2012), *aff'd*, 783 F.3d 786 (11th Cir. 2015). In August 2012, the District Court denied defendants' motions for judgment as a matter of law and alternative motions for a new trial. *Id*. at *1-2. Defendants appealed several of the District Court's rulings, but the

---

[2] In a deposition taken on December 7, 2010 in the SEC Enforcement Action, Kaley testified that he was admitted to the practice of law in only one jurisdiction, New York. *See* Transcript of the Deposition of Mark C. Kaley, *SEC v. Big Apple Consulting USA, Inc. et al.*, Case No. 6:09-cv-1963, a true and correct excerpt of which is attached hereto as Exhibit B. According to the New York State Court's website, the only Mark Christopher Kaley listed as an attorney was suspended from the practice of law in 2009. *See* NY Unified Court System Attorney Search, available at https://iapps.courts.state.ny.us/attorney/captcha. In confirming this suspension, the Appellate Division concluded that, among other things, "the respondent's fabrication of court documents to which he affixed a judge's signature constitutes serious professional misconduct." *In the Matter of Kaley*, 66 A.D.3d 43, 46 (N.Y. App. Div. 2009).

Eleventh Circuit affirmed the lower court's decisions. 783 F.3d at 814. As part of this appeal, Kaley specifically challenged the sufficiency of the SEC's evidence against him. *Id.* at 812-814. The Eleventh Circuit carefully considered and then rejected his argument, saying that "[s]ufficient evidence supported the jury's determination that Kaley acted with actual knowledge and severe recklessness in violation of § 17(a)(1) of the Securities Act and § 20(e) of the Exchange Act." *Id.* at 813. On March 29, 2013, after weighing the statutory factors and competing arguments, the District Court set Kaley's civil monetary penalty at $156,500. *SEC v. Big Apple Consulting USA, Inc.*, No. 6:09-cv-1963, 2013 U.S. Dist. LEXIS 46020, at *6-10 (M.D. Fla. Mar. 29, 2013). The ultimate amount levied against Kaley was less than half of the $360,000 penalty sought by the SEC. *Id*. at *8.

To date, Kaley has made no payments, other than offsets of federal tax refunds, in connection with the District Court judgment. (Motion ¶ 4.) As of May 24, 2019, he owed a total of $148,742.81, which includes $36.66 in post-judgment interest.

### B.     The Debtor's Motion Seeking to Vacate the Judgment in the SEC Enforcement Action

On January 17, 2019, Kaley voluntarily filed a petition for relief under Chapter 7 of the Bankruptcy Code. (Motion ¶ 1.) On April 3, 2019, Kaley filed the Motion, seeking to invoke this Court's equitable powers and have the Court declare unenforceable the judgment issued by the District Court in the SEC Enforcement Action. (*Id*. ¶¶ 5-7.) In his papers, the Debtor states that he does not seek to relitigate the issues decided in the District Court, nor does he challenge the sufficiency of evidence against him. (*Id*. ¶ 13.) Instead, even though the Debtor acknowledges that the judgment resulting from the SEC Enforcement Action is not dischargeable (*id*. ¶ 3), he asks the Court to "declare [the debt to the SEC] as presenting an undue hardship . . ." under subsections (5) and (6) of FRCP 60(b) (*id*. ¶¶ 5-7). The crux of the Debtor's argument is

4

that the judgment in favor of the SEC has prevented him from obtaining what he believes to be suitable employment.  (*Id.* ¶¶ 10-17.)  In the immediate past, the Debtor worked for Amazon, Inc. and the Walt Disney Company, and he recently obtained an MBA.  (*Id.* ¶¶ 11-13.)

### III.  DISCUSSION

#### A.  The Relief Sought Is Unavailable As A Matter Of Law

##### *1.  FRCP 60(b) Does Not Provide a Basis for Relief*

The Debtor contends that, based on his conclusory and unsupported assertions of hardship, the Court can grant him relief from the debt owed to the SEC by vacating the District Court's judgment using FRCP 60(b)(5) and (6).  (Motion ¶¶ 6, 7, 18, and 19.)  He is mistaken.

FRCP 60(b) states, in pertinent part, that a court may relieve a party from a judgment for certain reasons, including "(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60.  FRCP 60(b) is made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 9024.

However, FRCP 60(b) does not provide a basis for this Court to vacate a judgment rendered in another federal court.  *See In re Property Mgmt. & Inv., Inc.*, 19 B.R. 202, 204 (Bankr. M.D. Fla. Mar. 4, 1982) ("it is PMI's contention that FRCP 60 empowers this Court to reconsider and set aside prior final orders of a non-bankruptcy forum which have not been appealed even if it was entered by a court with jurisdiction of the subject matter and jurisdiction over the parties. This is simply not in the law.").  Rather, motions under FRCP 60(b) must be presented to the court that rendered the judgment.  *See, e.g.*, *Board of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir. 2000) ("This circuit is among the majority that require Rule 60(b) motions to be presented to the rendering court."); *Manoukian v. Sec'y United States Dep't*

*of Homeland Sec.*, No. 6:13-cv-1422, 2013 U.S. Dist. LEXIS 170139, at *11-12 (M.D. Fla. Nov. 15, 2013) (concluding that the court lacked authority to hear the petition under Rule 60(b) and that petitioner was required to seek relief in the rendering court).[3]

An exception to the requirement of filing a Rule 60(b) motion in the rendering court is a jurisdictional challenge to the original suit. *Flame S.A. v. Indus. Carriers, Inc.*, 24 F. Supp. 3d 513, 516 (E.D. Va. 2014). Here, there is no challenge or question as to the District Court's jurisdiction in the SEC Enforcement Action. Accordingly, a motion under FRCP 60(b)(5) and (6) to revisit the judgment in the District Court must be presented to the District Court.[4]

### 2. General Powers of Equity Cannot Trump Explicit Statutory Provisions of Nondischargeability

The Debtor argues that the Court can "utilize its grand reservoir of equitable powers to . . . vacate the above referenced judgment." (Motion ¶ 18.) But it is well-established that bankruptcy courts cannot use their equitable powers to override specific acts of Congress. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("Whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *In re Welzel*, 275 F.3d 1308, 1318 (11th Cir. 2001) ("The statutory language of the Bankruptcy Code should not be trumped by generalized equitable

---

[3] As a leading commentator explains:

> Rule 60(b) does not explicitly limit the court in which a motion for relief from judgment may be filed. However, it is clear that the drafters of the rule contemplated that the motion (as opposed to an independent action in equity that could be brought anywhere that was appropriate) would always be brought "in the court and in the action in which the judgment was rendered."

12 James Wm. Moore et al., *Moore's Federal Practice*, § 60.60 (3d ed. 2005) (quoting Fed. R. Civ. P. 60(b) advisory committee note of 1946).

[4] Even if the Motion was properly before this Court, the Debtor still would not be entitled to relief. It is well established "that relief under [Rule 60(b)(6)] is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (citing *Ackermann v. United States*, 340 U.S. 193 (1950)). "The party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Id.* (quoting *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932)). The Debtor has made no such showing.

pronouncements, especially when Congress has been explicit when it intends for courts to exercise equitable discretion in the bankruptcy arena.").

The debt at issue in this case falls squarely within such an act of Congress. Specifically, Congress enacted Section 523(a)(19) of the Bankruptcy Code as part of the Sarbanes-Oxley Act of 2002. A key goal in enacting the provision was "to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy." *In re Pujdak*, 462 B.R. 560, 573 (Bankr. D.S.C. 2011) (quoting S.Rep. No. 107-146., at 3 (2002)). In general, Section 523(a)(19) excepts from discharge any debt that is for securities laws violations and that results from a judgment, order or consent order entered in a state or federal proceeding. The specific text of the statute provides:

> A discharge under section 727, 1141 . . . does not discharge an individual debtor from any debt— . . . .
>
> (19)  that –
>
>   (A) is for –
>
>     (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>
>     (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
>   (B) results before, on, or after the date on which the petition was filed, from –
>
>     (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>
>     (ii) any settlement agreement entered into by the debtor; or
>
>     (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. §523(a)(19). Here, the debt at issue is for the Debtor's violations of the federal securities laws and resulted from a judgment against the Debtor (*see Big Apple Consulting*, 2013 U.S. Dist. LEXIS 46020, at *4-5, 10)—and the Debtor acknowledges that the debt is not dischargeable (Motion ¶ 3).

In sum, the Debtor's Motion requests that this Court use its equitable powers effectively to discharge the District Court judgment. However, as a debt arising from a judgment for violating the federal securities laws, the debt is nondischargeable under Section 523(a)(19).

### 3. A Final Judgment Entered in District Court Cannot Be Collaterally Attacked in Bankruptcy Court

The Debtor's Motion constitutes an impermissible collateral attack on the District Court's final judgment. The "general rule" has long been "that the judgment of a court having jurisdiction of the offence charged and of the party charged with its commission is not open to collateral attack." *Andersen v. Treat*, 172 U.S. 24, 31 (1898). In the Eleventh Circuit, a party asking the court to apply estoppel must establish that (1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was litigated in the earlier proceeding; (3) the determination of the issue was a critical and necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue. *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1180 (11th Cir. 2013).

The first two factors are met because the issue of the Debtor's supposed hardship was raised and litigated in the earlier District Court case. In opposing the SEC's motion to set civil monetary penalties in that case, Kaley presented an even more dire depiction of his financial affairs than what is set forth in the Motion, *e.g.*, that his "current financial position [was] well below the poverty line"; that he was married with two children; that he was "currently underemployed, [and] had been underemployed since January 2011"; that he could only find

part-time work with Walt Disney Parks and Resorts at an hourly wage of $7.95; and that "his debts far outweigh[ed] any possibility of repayment, and what little money he [was] able to bring into the household [was] far outweighed by the family's monthly expenses." *See* Defendant Kaley's Pro Se Opposition to Plaintiff's Motion to Set Penalties Against Defendants Big Apple Consulting USA, Inc., MJMM Investments LLC, Marc Jablon, Mark Kaley and Matthew MaGuire, *SEC v. Big Apple Consulting USA, Inc. et al.*, Case No. 6:09-cv-1963 [Docket No. 226] at 4, a true and correct copy of which is attached hereto as Exhibit C.  In fact, Kaley included an entire legal argument on this point under the heading: "**Any Penalty assessed against Kaley should be waived or reduced based on his demonstrated current and future financial condition**." *Id.* at 10-11 (emphasis in original).

The third factor is met because the issue was critical and necessary to the District Court's decision to set the penalty at an amount far lower than the SEC requested.  Indeed, the District Court's opinion setting the penalty specifically mentioned Kaley's opposition papers when finding that the "particular circumstances" warranted a lesser penalty amount.  *See Big Apple Consulting*, 2013 U.S. Dist. LEXIS 46020, at *8-10.  The fourth and final factor is met because Kaley was a party to the previous action and actively contested the issue of the penalty, which included submitting a twenty-four page opposition to the penalty.  *See, e.g.*, Ex. C.

**B.     The Court Should Not Stay the Bankruptcy Proceeding**

In the alternative, the Debtor requests that the Court "stay" this bankruptcy proceeding to allow him time to file a motion under FRCP 60(b)(5) and (6) in the District Court which rendered the judgment.  The request should be denied.  Although the Debtor does not cite any authority for staying the case, he presumably seeks to suspend the case under Section 305 of the Bankruptcy Code.  However, suspending a case under Section 305 is a form of extraordinary

relief and requires a showing that "the interests of creditors and the debtor would be better served by such dismissal or suspension." *In re Paper I Partners, L.P.*, 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002) (quoting 11 U.S.C. §305(a)(1)). The Debtor has made no such showing, and the request itself appears to be tactic to frustrate the SEC's enforcement of the judgment. As such, the request should be denied. *See In re Speer*, 522 B.R. 1, 13 (Bankr. D. Conn. 2014) (denying motion and stating that "dismissal or suspension here would only provide [the debtor] with a platform to continue her delaying tactics in state court").

### IV. CONCLUSION

WHEREFORE, the Commission respectfully requests that this Court deny the Debtor's motion.

Dated:  June 4, 2019

Respectfully Submitted,

 /s/ *William M. Uptegrove*
William M. Uptegrove
NY #4846622
Telephone:  (404) 842-5765
E-mail:  uptegrovew@sec.gov

*Counsel for*:

**U. S. SECURITIES AND EXCHANGE COMMISSION**
Atlanta Regional Office
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA  30326-1382
Telephone: (404) 842-7600